STATE OF CONNECTICUT *v.* HOWARD R. LUBAN ET AL.

SUPERIOR COURT     NEW HAVEN COUNTY     FILE No. 15900
AT NEW HAVEN

Memorandum filed October 23, 1969

*Arnold Markle*, state's attorney, for the state.

*Goldstein & Peck*, of Bridgeport, for the named defendant.

*Theodore I. Koskoff*, of Bridgeport, for the defendant Gordon.

PALMER, J.  This is a motion by the defendants Howard R. Luban and William L. Gordon, hereinafter called the defendants, to dismiss the information on the ground of denial of the right to counsel, or, in the alternative, for other relief.

The factual background is as follows:  The defendants were arrested on Friday, September 19, 1969, without previous complaint and warrant, on the speedy information of others, by Milford police officers who also had reasonable grounds to believe that the defendants had committed a number of felonies.  See General Statutes § 6-49.  On the same day, they were "promptly presented" before the Circuit Court in the fifth circuit, where the offenses were alleged to have been committed, as required by General Statutes § 54-63c, at which time both were represented by the same attorney.  After hearing the assistant prosecuting attorney and the attorney for the defendants, the Circuit Court fixed the amount of bail for each defendant at $75,000 and ordered a continuance until Tuesday, September 23,

1969. The defendants did not furnish bail and were committed to jail for the period of the continuance under a Circuit Court mittimus. The defendants again appeared in the Circuit Court on September 23, 1969, when each was represented by a separate attorney. At this hearing, the assistant prosecuting attorney represented to the court that he had been informed by the office of the state's attorney for New Haven County that an application for a bench warrant for the arrest of the defendants had been completed and was to be presented to a judge of the Superior Court later in the day. The Circuit Court then continued the cases until September 26, 1969, and the defendants were again committed to jail, for want of bail, under a Circuit Court mittimus.

On the same day, September 23, 1969, the state's attorney for New Haven County applied to a judge of the Superior Court for a bench warrant for the arrests of the defendants and a codefendant on charges of (1) kidnapping, (2) robbery with violence, (3) assault with intent to murder, and (4) binding with intent to commit crime. Submitted to the judge at that time was an affidavit of facts to enable him to make an independent determination as to the existence of probable cause for the issuance of a bench warrant, as required by *State* v. *Licari*, 153 Conn. 127, 132. The judge did find such probable cause, ordered the arrests of the defendants and codefendant to answer to the charges alleged against them in an attached original information, and fixed bail at $100,000 for each of them. Pursuant to this warrant, the defendants were arrested on the same day and were immediately brought before an assistant clerk of the Superior Court in New Haven County who notified them of their rights in accordance with § 54-43 of the General Statutes. They did not furnish the prescribed bail and were ordered to be confined pursuant to a Superior Court mittimus.

## I

The court will first consider the claim of the defendants that they were denied their constitutional rights to the assistance of counsel for their defense.

## A

It is undisputed that, as the defendants claim, the bench warrant for their arrests, which fixed the bail for each of them at $100,000, was applied for by the state's attorney and issued by the judge without notice to the defendants' attorneys of record in the Circuit Court, who were known to the state's attorney, and in the absence of those attorneys. It is specifically the claim of the defendants that the absence of their attorneys on September 23, 1969, at the time the state's attorney made application for the bench warrant by virtue of which they were arrested on that day constituted a denial of their right to counsel in violation of the sixth and fourteenth amendments to the constitution of the United States and article first, § 8, of the constitution of Connecticut. This appears to be an unprecedented claim, and, since the procedure followed in this instance is commonplace in this state, it becomes important to determine whether this procedure is tainted with constitutional infirmity by reason of the absence of counsel for the defendants when the application for the bench warrants for their arrests was made to the judge of the Superior Court.

The defendants cite and apparently ground their claim on the following language of the Supreme Court of the United States in *Powell* v. *Alabama,* 287 U.S. 45, 69: "[A defendant] requires the guiding hand of counsel at every step in the proceedings against him." Implicit in the defendants' stance here is the contention that the application for and issuance of the Superior Court bench warrant, with

its order that bail be fixed at $100,000 for each defendant, were in the constitutional sense a "step in the proceedings against" them. This contention must be considered in the light of the statute pursuant to which the bench warrant was issued and the decisions of the Supreme Court of this state regarding the very procedure followed here.

Section 54-43 of the General Statutes provides that "[u]pon the representation of any state's attorney that he has reasonable ground to believe that a crime has been committed within his jurisdiction, the superior court or . . . any judge thereof, may issue a bench warrant for the arrest of the person or persons complained against, and in such case shall . . . fix a bond for the appearance of such person or persons in such amount as to said court or such judge appears reasonable." The thrust of the statute encompasses any crime which has been committed within the jurisdiction of the state's attorney and is in no way limited to crimes or cases other than those whch have been presented to the Circuit Court. The action of the state's attorney had no legal relationship to or dependency on the prior arrests or proceedings in the Circuit Court.

"The procedure followed in this instance is deeply rooted in the common law. *State* v. *Keena,* 64 Conn. 212, 215 . . . . As we said in *State* v. *Stallings,* 154 Conn. 272, 278, . . . in a similar instance: 'The procedure which was followed in this case has been the practice in this state for a great many years and serves the desirable end of expediting the disposition of criminal cases to the mutual benefit of the defendant and the state. *State* v. *Hayes,* 127 Conn. 543, 581 . . . ; *State* v. *Chin Lung,* 106 Conn. 701, 720 . . . . The filing of the original information in the Superior Court was not prohibited by any constitutional provision. *Dillard* v. *Bomar,* 342 F.2d

789 (6th Cir.); *United States ex rel. Cooper* v. *Reincke*, . . . [333 F.2d 608, 611 (2d Cir.)]; *State* v. *Hayes,* supra. The service of the Superior Court bench warrant superseded the Circuit Court mittimus, under which the defendant was being held, and brought him under the jurisdiction of the Superior Court. *State* v. *Chin Lung,* supra.' An original information may be filed in the Superior Court in any case in which the Circuit Court may, at its discretion, punish or bind over for trial and in any other case on the order of the Superior Court. General Statutes § 54-42. On . . . [the date of arrest], at the time of the defendant's arrest by virtue of the Superior Court bench warrant, that court acquired jurisdiction of the defendant just as though he had been bound over from the Circuit Court. *State* v. *Stallings,* supra." *State* v. *Purvis,* 157 Conn. 198, 205.

It is clearly apparent that the arrests pursuant to the Superior Court bench warrant on September 23, 1969, superseded and overrode the Circuit Court mittimus under which the defendants were being held in jail and brought them under the jurisdiction of the Superior Court. *State* v. *Stallings,* 154 Conn. 272, 279. The arrests initiated a new and independent proceeding in the Superior Court which was in no way dependent for its legality on the prior arrests or proceedings in the Circuit Court. The service of the bench warrant marked the termination of the jurisdiction of the Circuit Court and the commencement of a new and separate jurisdiction of the Superior Court, acquired pursuant to a separate and unrelated statute. The Superior Court acquired exactly the same jurisdiction as it would have acquired by arrests pursuant to a bench warrant if there had been no prior arrests or proceedings in the Circuit Court. The issuance and service of the bench warrant were not, in any legal or constitu-

tional sense, a "further step" in the proceedings then pending in the Circuit Court.

In consequence, the defendants' claim that they were entitled to notice and an opportunity to be heard, with the assistance of counsel, in respect to the issuance of the bench warrant is tantamount to a claim that any person suspected of crime is entitled to be notified that the state's attorney intends to apply for a bench warrant for his arrest and is further entitled to a hearing in regard thereto, with the assistance of counsel, before a bench warrant may be constitutionally issued. Obviously such a claim would be untenable. The undoubted constitutional right of these defendants to the assistance of counsel in respect to the charges against them in the Superior Court came into being at the time of their arrests on those charges, and not one instant before. If their arrests were made without probable cause, or their bail fixed at an excessive amount, our law provides ample remedies, but it does not require that they be accorded the assistance of counsel prior to their arrests, which in substance is what the defendants are claiming.

## B

Even it be assumed arguendo that the bench warrant proceeding was constitutionally a continuation of or a further step in proceedings pending against the defendants in the Circuit Court, an examination and analysis of the history and development of the relevant constitutional decisions will demonstrate that it was not a step or stage at which the defendants were constitutionally entitled to the assistance of counsel.

*Powell* v. *Alabama,* 287 U.S. 45, 71, was a capital case in which the United States Supreme Court decided that the failure of the trial court to give

the accused persons "reasonable time and opportunity to secure counsel was a clear denial of due process," and that "the necessity of counsel was so vital and imperative that the failure of the trial court to make an effective appointment of counsel was likewise a denial of due process within the meaning of the Fourteenth Amendment." It should be noted that the absence and denial of counsel complained of in *Powell* were at a trial which resulted in the imposition of the death penalty. In the course of its opinion, the court made the oft-quoted statement, cited and relied on by the defendants here, that an accused "requires the guiding hand of counsel at every step in the proceedings against him." Id., 69. Nevertheless, on its facts *Powell* holds only that an accused is entitled to the effective assistance of counsel at the trial of a capital case. In *Crooker* v. *California,* 357 U.S. 433, 439, a prosecution for murder, the United States Supreme Court said that there is a violation of due process if an accused "is deprived of counsel for any part of the pretrial proceedings, *provided* he is so prejudiced thereby as to infect his subsequent trial with an absence of 'that fundamental fairness essential to the very concept of justice [italics supplied].' *Lisemba* v. *California,* 314 U.S. 219, 236 . . . . The latter determination necessarily depends upon all the circumstances of the case."

In *Hamilton* v. *Alabama,* 368 U.S. 52, 54, also a capital case, the court held that, in Alabama, arraignment "is a critical stage in a criminal proceeding," and therefore absence of counsel at that stage required a reversal of conviction even though no prejudice was shown. And in *White* v. *Maryland,* 373 U.S. 59, 60, also a capital case, the court held that "[w]hatever may be the normal function of the 'preliminary hearing' under Maryland law, it was in this case as 'critical' a stage as arraignment under

Alabama law," and reversed the conviction. The celebrated case of *Gideon* v. *Wainwright,* 372 U.S. 335, was decided after *Hamilton* and before *White.* It established the constitutional doctrine that the sixth amendment to the federal constitution, providing that in all criminal prosecutions the accused shall enjoy the right to the assistance of counsel for his defense, is made obligatory on the states by the fourteenth amendment. This decision is grounded on the basic concept (p. 344) that "any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him. This seems to . . . [the court] to be an obvious truth." The fundamental purpose of having the assistance of counsel, whether provided by the state or privately retained, is to ensure a fair trial for all accused persons, and all claims of constitutional infirmity based upon a denial or absence of counsel must be appraised and evaluated in the illumination of that purpose.

In *DeToro* v. *Pepersack,* 332 F.2d 341, 342 (4th Cir.), the specific claim was made that "the right of an accused to counsel in felony cases, *Gideon* v. *Wainwright,* 372 U.S. 335, . . . , extends to all stages in the judicial process and not only to those that may be characterized as critical." The court expressly overruled this claim, saying (p. 343): "In our view . . . [*Hamilton* v. *Alabama,* supra, and *White* v. *Maryland,* supra] teach that an accused is denied rights afforded him under the sixth amendment when he is subjected to an arraignment or to a preliminary hearing without the assistance of counsel, where events transpire that are likely to prejudice his ensuing trial." The case of *United States ex rel. Cooper* v. *Reincke,* 333 F.2d 608 (2d Cir.), involved the failure to supply defense counsel at a Connecticut hearing in probable cause where the unrepresented accused waived examination and

pleaded not guilty. He contended that his conviction was defective because of the absence of counsel when he entered his not guilty plea at the probable cause hearing, and he relied on *Hamilton* v. *Alabama,* supra, and *White* v. *Maryland,* supra. The court said (p. 611) that "the 'critical' point [in each case] is to be determined both from the nature of the proceedings and from that which actually occurs," and held (p. 612) that the Connecticut hearing in probable cause cannot "be characterized as critical." See *Marcella* v. *United States,* 344 F.2d 876, 881 (9th Cir.). In *Austin* v. *United States,* 408 F.2d 808, 810 (9th Cir.), the court said that "lack of counsel at proceedings before a commissioner, either on arraignment or preliminary hearing, does not ipso facto constitute a denial of the Sixth Amendment right to counsel." A fortiori, the absence of counsel at a bench warrant proceeding would not ipso facto constitute such a denial.

There emerges from these decisions the principle that the absence of counsel from pretrial proceedings in criminal prosecutions is not in and of itself a constitutional defect and that such absence is entitled to be accorded constitutional recognition only if the particular proceeding in question may be characterized as a critical stage in the proceedings or is one where events occur which are likely to prejudice or derogate from the right of an accused person to a fair trial. The claim of the defendants here that they were denied their sixth amendment right to have the assistance of counsel for their defense at the bench warrant proceeding must be examined in the light of that principle.

Nowhere in their brief or in the oral argument have the defendants claimed or even intimated that anything took place or could have taken place at the time of the application for and issuance of the bench

warrant which would in any possible way be likely
to impair or prejudice their right to a fair and
impartial trial. The sole criticism stated in their
brief is that they "were entitled to counsel when
ex parte representations directly affecting their
liberty while presumed to be innocent were made"
to the Superior Court judge who issued the bench
warrant. Admittedly, these representations had to
do with the determination of the amount of bail to
be fixed by the judge, and they could not conceivably
have had the remotest tendency to establish a pos-
sibility, much less a likelihood, of derogation from
the defendants' right to a fair trial by reason of the
absence of counsel at the bench warrant proceeding.
Without a showing of the likelihood of such deroga-
tion, the defendants' claim of denial of the assistance
of counsel is without merit.

## C

The short answer to the claim of the defendants
that they were denied the assistance of counsel is
that they themselves had no right to be present at
the bench warrant proceeding which preceded their
arrests, and therefore they had no right to have
their counsel present thereat.

## II

The defendants ask that the information be dis-
missed or, in the alternative, that (a) the ex parte
bench warrant proceeding be declared null and void,
and (b) they be admitted to reasonable bail.

## A

The court will first consider the claim that the
bench warrant proceeding ought to be adjudged a
nullity.

The state's attorney, when he applied to the Supe-
rior Court judge for the issuance of a bench warrant

for the arrests of the defendants and a codefendant pursuant to § 54-43, submitted to the judge a signed original information, accusing them of the commission of four crimes, and a sworn affidavit of a Milford police officer reciting the facts in regard to the offenses charged in the information, as required by *State* v. *Licari*, 153 Conn. 127, 132. The judge had two, and only two, functions to perform: (1) to make an independent determination, upon the basis of the recitals in the affidavit, that probable cause existed for the issuance of the bench warrant; and (2) if he so found, to fix the amount of bail for the persons to be arrested.

If a judge or a court determines that probable cause exists for the issuance of a bench warrant, as did the judge here, it is usual and customary for a state's attorney to suggest the amount of the bail to be fixed and to acquaint the judge or the court with any information he may have which is relevant and material in regard to the amount of that bail. Presumably the state's attorney did so in this instance. The fixing of bail is, however, distinctively a judicial function; *State* v. *Nelson*, 126 Conn. 412, 427; and it may be safely presumed that the judge exercised that function in a judicial manner. He had before him, in addition to any information which may have been imparted orally by the state's attorney, the original information charging the defendants with four serious felonies, together with the affidavit setting forth facts which he had found constituted probable cause for the arrests of the defendants on those charges. Presumably he was aware that these defendants, if convicted of the crimes charged, would become subject to maximum imprisonment for an effective term of not less than 50 years less one day and not more than 130 years. Surely the fact of such a possible sentence justified very substantial bail for each defendant.

The defendants level their heaviest fire at the ex parte nature of the bench warrant procedure. Clearly, it is obviously essential that it must be ex parte to make certain that a person who is not in legal custody will not be forewarned of his impending arrest, so that he will not have the opportunity of attempting to avoid arrest if he wishes to do so. This procedure is not offensive to constitutional propriety. The instant an arrest is made, the accused person has recourse to relief against excessive bail. Conn. Const., art. I § 8. He may apply to the judge who fixed the bail or to the Superior Court, at which time he may be fully heard on all the facts and circumstances relevant to the amount of his bail, and the judge or the court may reduce the amount of bail fixed in the bench warrant. If the accused is dissatisfied with the decision on such an application, he may move for immediate review by our Supreme Court pursuant to Practice Book § 694, which grants to that court power to "modify or vacate any order denying or fixing the amount of bail." This procedure fully accords with any reasonable concept of due process of law.

The defendants' claim that the ex parte bench warrant proceeding should be declared null and void must necessarily rest on the contention that the Superior Court judge who issued the warrant acted outside of the confines of his legal power and jurisdiction. That is palpably not the case. Even if it be assumed that the $100,000 bail fixed at that proceeding was excessive, that would not be a basis for nullifying the bench warrant proceeding. The fixing of bail was a judicial act within the power and authority specifically vested in the judge by the provisions of § 54-43, the constitutionality of which has not been questioned.

## B

The motion of the defendants that they "be admitted to reasonable bail" will be treated as a motion by each defendant to reduce the amount of his bail as fixed by the Superior Court judge who issued the bench warrant, and the court will enter a separate order in respect to such motions.

The motion to dismiss the information or, in the alternative, for other relief is denied, except that a separate order will be subsequently made in respect to each defendant's bail.