## STATE OF CONNECTICUT *v.* ANONYMOUS (1973–6)[*]

### SUPERIOR COURT

SADEN, J.  Identical motions to dismiss the informations for want of in personam jurisdiction have

[*] Opinions on preliminary motions in criminal cases are thus entitled, in view of General Statutes § 54-90.

been filed by the same counsel in two cases. The motions belong to what might be best described as the "kitchen sink" variety of legal motions which wildly throws in practically all the constitutional concepts one can name, whether even remotely applicable or not, plus a few other concepts dubbed "constitutional" by counsel although they fail to meet such a standard, in the obvious hope that somewhere, somehow, counsel may hit upon something significant. This is aptly described as "tossing in everything, including the kitchen sink."

# I

The case against one defendant, henceforth referred to as A, contains four counts: (1) possession of heroin with intent to sell in violation of Public Acts 1972, No. 278 § 24 (a) (General Statutes § 19-480); (2) acting with intent that conduct constituting a crime be performed, having agreed with B, C, and other known and unknown persons to engage in the crime of possession of heroin with intent to sell or dispense in violation of General Statutes § 53a-48; (3) interfering with a search in violation of § 54-33d; (4) destruction of property in violation of § 54-33e.

The case against the other defendant, B, contains two counts: (1) the same as the first count against A; (2) the same as the second count against A except to substitute B's name for A's.

The motions when summarized allege: (1) The Superior Court "secretly" issued a bench warrant without defense counsel's knowledge or presence and with a higher bond than that fixed previously in the Circuit Court; (2) the bench warrant was issued on the same affidavit as the Circuit Court's search warrant leading to the initial arrest in that court; (3) the search warrant was invalid because (a) the last

page of the affidavit in its support was not signed under oath, (b) it was a general warrant, and (c) the affidavit did not establish probable cause; (4) critical allegations of the affidavit are false; (5) the defendants' constitutional rights under the fifth, sixth, seventh, eighth, ninth and fourteenth amendments to the federal constitution have been violated because of said defects, thus "infecting" the prosecution in the Superior Court; (6) the defendants' rights have been violated as to "security" with regard to unreasonable search and seizure, improper and unsupported warrants to search unspecified places and persons or things to be seized, a fair trial, double jeopardy, information on the nature and cause of accusation, confrontation by witnesses, assistance of counsel, excessive bail, cruel and unusual punishment, a public hearing on all critical aspects of the case, a hearing in probable cause, due process of law, and equal protection of laws.

Defense counsel concludes with the bland statement that the "relief . . . requested is reasonable." He then submits his own personal affidavit in which he asserts that paragraphs 1, 2 and 6 of his motions are true (out of a total of twelve paragraphs alleged) and proceeds to narrate information which he has personally obtained through his investigation of the charges and which he believes to be true, controverting statements made in the affidavit supporting the search warrant which was in turn attached to the affidavit supporting the bench warrant in each case. Defense counsel seeks to offer the evidence thus derived from his investigation to support the motions to dismiss.

The defendants claim in essence that this court does not have in personam jurisdiction over them because the arrest and bench warrants are the fruits of an illegal search. They are therefore seeking to

attack the search warrants on which they contend the arrests were based but are doing so in the form of motions to dismiss. What is more, their attack is not limited to the content sufficiency of the affidavits on which the search and seizure warrants were issued but extends to the failure of the form of signature on the last page of the affidavit accompanying the application for a search warrant, and also to the facts stated by the affiant in that affidavit, leading to the arrest. In other words the defendants appear to concede that on their face the affidavits in question, if true, were sufficient to justify the search and seizure warrants and the arrest warrants that followed, but they dispute the veracity of the fact statements in the affidavits. In their brief they request the right to offer evidence on these fact questions, challenging the affidavits.

The affidavit attached to the bench warrant was sworn to by a police officer with three and one-half years' experience who was a member of the narcotics squad. In the affidavit he narrated the events of the day when he and other members of the squad, under a search warrant issued that day by the Circuit Court, proceeded to the premises named therein to search those premises and the person of B. Through a kitchen window they observed three persons, the two defendants and C, sitting in the living room "cutting up heroin," i.e. spooning a white powder into glassine bags. C sifted the contents of a large glassine bag through a strainer. The officers knocked on the front door, stating that they were police and had a search warrant. A forced entry had to be made, and there follows a detailed description of the actions of the two defendants and C in their efforts to avoid detection and to destroy evidence. The search produced a large quantity of glassine bags, rubber bands, and white powder, some of which was later tested to be heroin and quinine. The

affidavit also contained a statement concerning recent past involvements of B and C with heroin, resulting in Circuit Court arrests. It concludes by asserting that the affiant has probable cause to believe that the crimes now alleged in the informations against B and A were committed.

In paragraph 2 of the affidavit affixed to the bench warrant, reference is made to a search warrant issued by the Circuit Court which is incorporated as part of the bench warrant affidavit. The Circuit Court search warrant recites that two police officers, prior to the issuance of the search warrant, met with a reliable informant who in the past had supplied information leading to approximately twenty arrests, seizures or convictions. The officers had known him for about one year. He supplied them with information concerning B, who was active as a heroin dealer at a stated address. The informant knew this from having been on the premises on many occasions and having observed many glassine bags containing a white powder. He was last on B's premises that very day just before meeting the officers. He saw others enter B's premises and purchase from him some of these glassine bags for cash. The affidavit further discloses the checking done by the affiants on police records of B and utility and housing records for his street address. They also conducted a daylight surveillance of the premises and observed habitual narcotics users who were known to them and had been arrested for narcotics violations. All of these users entered the premises and left in ten minutes. The same surveillance and observations were made three days later. After two more days the officers met again with their informant who stated that he had been on B's premises the previous night and had observed a male make a purchase of glassine bags as previously described. On the next day the affiants met again with their informant who said he had been

on B's premises that day and had once more observed others coming into the premises and purchasing glassine bags with white powder in them from B.

The Circuit Court search warrant is directed to search the person of B; to enter his premises; and to search and seize certain narcotics specifically listed in the search warrant.[1] It is signed by a judge, and the oaths of the affiants are taken by him. The search warrant affidavit itself consists of three pages of typing. At the end of page two, the affiants signed their names and the judge took their oaths, himself signing his name to that effect after printed words stating "JURAT subscribed and sworn to before me . . . ." Just above the column of three signatures (the two affiants' and the judge's) appear the words "See continued page." This obviously refers to the third page, which is headed "continued" and runs right along, completing a sentence at the end of page two. This third page also contains the same three signatures as appear on page two, but since page three was originally a blank page without any form printing on it, on each signature line before each signature appeared the typed words "Signed at . . . ." More properly the language preceding the judge's signature should have been the "JURAT" which appears before his name at the bottom of page two. We will comment on this later.

We should also note that the affiant swearing to the bench warrant affidavit was one of the affiants on the Circuit Court search warrant. Thus the personal

---

[1] "Certain narcotics, heroin, cocaine, morphine type drugs, marijuana, amphetamine type pills, cannabis type drugs, cocaine type drugs, hallucinogenic and morphine type drugs, glassine envelopes, cookers, needles, syringes, papers and containers used to hold said drugs and scales used to weigh the same, all of the above which are used to violate sections 19-481a and 19-481b of the Connecticut General Statutes as amended by Public Act 278 (1972 session), sections 24, 25, 26 and 27."

knowledge he had of the entire matter, as represented by both affidavits, was offered to the Superior Court with the application for the bench warrant.

It would be difficult to conceive of an affidavit more detailed and complete than the Circuit Court affidavit or the bench warrant affidavit following it. Their contents gave abundant reason to the Circuit Court and the Superior Court to issue the search and arrest warrants respectively. The defendants now make a broadside attack on these affidavits, undoubtedly recognizing that if they stand and the evidence is later substantially produced at trial as set forth in these papers, the defendants are doomed.

## II

Not only is the "kitchen sink" motion filed here by counsel reprehensible because it asserts all kinds of claims, constitutional and otherwise, many of which even a most extraordinary imagination cannot reasonably bring within the true parameters of this case, but it suggests a kind of hysteria that only weakens counsel's credibility with the court.

In the first place, the defendants' motions to dismiss are specifically addressed to attacking the in personam jurisdiction of the court and ignore Practice Book § 477B, which clearly provides that a motion to dismiss may not be used to attack the jurisdiction of the court. Such a motion prior to October 1, 1972, was countenanced under *State* v. *Licari,* 153 Conn. 127, 129–30, and *State* v. *Saidel,* 159 Conn. 96, 97, although there appeared then to be no sanction for it in the Practice Book. Cf. 1 Stephenson, Conn. Civ. Proc. (2d Ed.) § 103c (where the author points out that such a civil action motion prior to 1972 was proper only in appeals to the Supreme Court) ; see *Glens Falls Ins. Co.* v. *Somers,* 146 Conn. 708, 712; *Connecticut Television, Inc.* v. *Loughlin,* 27 Conn. Sup. 133, 134; see also Practice

Book § 468 (so far as adaptable, civil rules apply in criminal cases). See Practice Book § 92 for pleas in abatement and motions to erase as the proper means of raising jurisdictional questions. They would certainly seem easily adaptable to criminal cases, and the language of Practice Book § 477B contemplates their utilization on matters related to the court's jurisdiction.

For this reason alone, i.e. the filing of an improper motion, the court is justified in denying the defendants' motions to dismiss. But there are additional reasons for denying these motions which should probably be set forth in order to expedite the processing of these cases and to avoid the proclivity of the defendants' counsel to file additional useless motions.

## III

At the outset, the court attempted to summarize in one paragraph the essence of the defendants' motions. The first claim, that the issuance of the bench warrant was illegal because counsel had no knowledge of it and it was issued ex parte in a "secretive" hearing out of the defendants' presence, cannot be sustained. It is apparently the defendants' contention that the sixth and fourteenth amendments to the federal constitution have been violated because this was a "critical stage of the proceeding." See *White* v. *Maryland*, 373 U.S. 59, 60; *Gideon* v. *Wainwright*, 372 U.S. 335, 344 (right to counsel); *Hamilton* v. *Alabama*, 368 U.S. 52, 54 (arraignment is a "critical stage"); *Crooker* v. *California*, 357 U.S. 433, 439 (where the court said due process was violated if a defendant is deprived of counsel in any part of pretrial proceedings, provided he is so prejudiced thereby as to infect his subsequent trial with an absence of the fundamental fairness essential to the concept of justice); *Powell* v. *Alabama*, 287 U.S. 45, 69, 71; Fed. R. Crim. P. 43.

In *DeToro* v. *Pepersack,* 332 F.2d 341, 342, the court ruled that the right to counsel does not extend to all stages of the judicial process of a felony case beyond those that may be characterized as critical. See *Austin* v. *United States,* 408 F.2d 808, 810; *United States ex rel. Cooper* v. *Reincke,* 333 F.2d 608, 611–12. If this is true after arrest, certainly constitutional rights cannot attach prior to arrest.

General Statutes § 54-43 provides for the issuance of bench warrants, a procedure deeply rooted in common law and not in any manner dependent upon prior arrests or proceedings in a Circuit Court of this state. When issued, a bench warrant supersedes the Circuit Court action in all respects. *State* v. *Purvis,* 157 Conn. 198, 206; *State* v. *Stallings,* 154 Conn. 272, 279.

Citations by the defendants do not support their position. *Lewis* v. *United States,* 146 U.S. 370, 374, was a felony case where the court determined that a trial commences at least from the time when the work of impaneling a jury begins. At such time the defendant must be brought face to face with prospective jurors because making challenges is an essential part of the case. Id., 376. In our case the defendants, to prevail, would have to establish that every single act, starting with the issuance of the arrest or bench warrant, is a "critical stage" of the proceeding. No court has ever so held, and the defendants offer no inexorable logic to persuade this court that such a proposition is sound. Thus, *United States* v. *Neal,* 320 F.2d 533, 535, only proves that the court may not receive an inquiry from the jury and answer it in the absence of the defendant. Cases such as *Arsenault* v. *Massachusetts,* 393 U.S. 5 (probable cause hearing is a "critical stage" requiring presence of counsel), and *Crowe* v. *United States,* 200 F.2d 526, 528 (modification of probation order is a "criti-

cal stage" requiring a defendant's presence), certainly do not provide analogies to the embryonic stage of an arrest under a bench warrant.

We must reject the defendants' argument that a bench warrant cannot issue unless the prospective accused and his counsel are present and granted a hearing before its issuance. *State* v. *Luban,* 28 Conn. Sup. 312, 318. Such a procedure would have a serious crippling effect upon the administration of criminal justice because it would forewarn a defendant of his arrest. Constitutional rights do not normally spring into operation in a criminal case until after the arrest has occurred. The defendants seek to affix them prior to the arrest, but generally speaking no such rights then exist except for the fourth amendment rights against unreasonable searches and seizures.

What is applicable to bench warrants as such is also true of setting bail bonds on such warrants. The Superior Court is not bound to fix a bond in the same amount as that fixed in the Circuit Court. This is a discretionary matter with the Superior Court; *State* v. *Nelson,* 126 Conn. 412, 427; unfettered by previous action of a lower court.

In the absence of any clear demonstration that the issuance of the bench warrants and the fixing of bail without the defendants' and their counsel's presence prejudiced the defendants' right to a fair trial on the merits, the defendants cannot very well assert the loss of any sixth amendment rights. Here the most the defendants can claim is that the amount of bail was increased over that set in the lower court. They contend they had a right to be heard on this before the fixing of the bail, but other factors already alluded to far outweigh such a procedure. Public policy reaching deep into our common law counsels against such a contention.

As for any alleged abuse of discretion by the Superior Court when it increased the amount of bail, we need only comment that the defendants offered no substantial supportive argument except that the lower court amount was lower. The offenses charged are serious—one count of possessing heroin with intent to sell in violation of Public Acts 1972, No. 278 § 24 (a) (General Statutes § 19-480), and one count of conspiracy to possess heroin with intent to sell in the case of B, and four counts against A, the first two being the same as against B plus a count for interfering with a search (§ 54-33d) and a count for destruction of property (§ 54-33e). The bonds were not unreasonable in either case. See *State* v. *Luban*, 28 Conn. Sup. 312, 323. A review of bonds by the Supreme Court is also possible under Practice Book § 694.

## IV

### A

Each defendant also complains that the bench warrant was issued on the basis of the same affidavit as the Circuit Court's search warrant leading to the initial arrest in that court. As already indicated, this is not true because the affidavit attached to the bench warrant was signed by one of the affiants who signed the Circuit Court search warrant affidavit. The incorporation of the latter into the bench warrant affidavit is not improper or erroneous.

### B

Counsel next claims that the search warrant is defective because the last page of the affidavit was not signed under oath. We have already described in detail the manner in which this affidavit was executed. It is obvious that a typographical error occurred on the "JURAT" line of the third page, but there is not the slightest doubt that page three was a continuation of page two, at the bottom of

which appear the sworn signatures of the two affiants before the judge. The same signatures are repeated at the bottom of page three, and it would be foolhardy to declare the affidavit improperly executed because of a clear typographical error, already described, which was intended to repeat the same wording as appears at the bottom of page two on the signature lines.

## V

Counsel claims that the warrant was a "general warrant" in violation of the rule in such cases as *Stanford* v. *Texas,* 379 U.S. 476. But *Stanford* expressly relates to a search warrant covering (p. 477) "books, records, pamphlets, cards, lists, memoranda, pictures, recordings and other written instruments concerning the Communist Party of Texas." Some 2000 items were seized, none of them, however, relating to Communist Party records, lists or payments. The court pointed out (p. 485) that a warrant which does not describe with particularity the things to be seized is invalid, especially where the seizures impinge on first amendment freedoms. But the court distinctly refrains (p. 486) from deciding whether the description in the warrant would have been too generalized had the things been weapons, narcotics or "cases of whiskey." Nothing sought in *Stanford* was contraband. And in *Steele* v. *United States No. 1,* 267 U.S. 498, 504, a warrant for "cases of whiskey," contraband under the Prohibition Act, was ruled specific enough even though there was no evidence specifically identifying the particular whiskey as that which the government agent had seen and referred to in his affidavit.

The warrant in this case detailed with considerable specificity the contraband narcotics sought and the implements used in their use and sale.[2] As indicated in *Steele* v. *United States No. 1,* supra, where we

---

[2] See note 1, supra.

are dealing with contraband as distinguished from literary or first amendment materials, the kind of specificity required is different from that of a warrant seeking to seize materials that are not in themselves contraband. The nature of narcotic drugs is such that an attempt to force greater specificity than was used in this warrant would serve only to destroy a strong public policy against the narcotics trade and make difficult, if not impossible, the apprehension of culprits engaged in purveying a deadly product that has many forms. The language of *Stanford* v. *Texas,* supra, 486, itself suggests its approval of *Steele.* Many drugs, like cases of whiskey, look alike. To attempt to distinguish each one in advance of seizure in any manner different from that employed here would only be emphasizing form over substance.

If the purpose of a search warrant is to seize property of a specified character (as distinguished from certain specified property) which (by virtue of its character, the place where and the circumstances under which it may be found, if found at all) would be illicit, a description would be unnecessary and ordinarily impossible except as to such character, place and circumstances. 79 C.J.S., Searches and Seizures, § 73f; 47 Am. Jur., Searches and Seizures, § 37; see *Search Warrant* v. *Marcus,* 334 S.W.2d 119, 124 (Mo.), rev'd, 367 U.S. 717.

*State* v. *Johnson,* 160 Conn. 28, 34, declared invalid a portion of the language in a search warrant order which permitted seizure of "any other paraphernalia which could be used to violate Sec. 54-197" and under which an army field manual entitled "Boobytraps" was seized. The case involved a conspiracy to injure persons and property by use of dynamite. See also *Marron* v. *United States,* 275 U.S. 192, 198; *State* v. *Allen,* 155 Conn. 385, 391; *State* v. *Taylor,* 28 Conn. Sup. 19, 23.

Thus it would appear that a search warrant seeking contraband need not contain the same specificity as one seeking noncontraband materials or papers. But even if we measure the present search warrant by the most exacting standard of specificity, it still passes the constitutional test of the fourth amendment. The generalized language at the end of the description, starting with "all of the above," avoids the fatal defect of the generalized phrase in *State v. Johnson,* supra, 35, because it merely refers back to what has been specified previously and does not attach any additional authority to the warrant to seize items falling within the scope of generalized language, as does the invalid phrase in *Johnson.*

It is true that the officer's return on the search and seizure warrant indicates several items such as a knife, a record album, a strainer, and scotch tape as having been seized. The search warrant does not specify these items, but the defendants have not requested their release, probably because their elimination from evidence would not materially affect the ultimate decision in the case. The court need not rule on the propriety of their seizure except to comment that the "plain view" doctrine of seizures may have application. See *Coolidge* v. *New Hampshire,* 403 U.S. 443, 464–72; *United States* v. *One 1965 Buick,* 392 F.2d 672, 679 (where money was seized under a search and seizure warrant in a gambling case although it was not specified in the warrant, the theory being that an item may be so closely related to the items detailed to be seized as to justify its seizure).

## VI

### A

As to counsel's claim that the search warrant affidavit fails to establish probable cause for the issuance of the warrant, we can find nothing to sup-

port such a contention. In fact, the mere assertion of this claim in the face of the affidavit summarized previously is not in the least flattering to counsel's legal acumen in a field where he is presumably experienced.

## B

Similarly, the defendants' motions ramble on into claims of constitutional violations under six different amendments to the federal constitution, which allegedly "infect" the present prosecution, supporting such assertions with nothing more than a bald generalized ticking off of alleged violations of the defendants' "security" against such violations. None of these claims is worthy of much more comment than that contained in this memorandum. Neither the defendants' brief nor argument has in any manner illuminated this sweeping condemnation of the warrant.

## VII

## A

We turn now to consider another of the defendants' claims. Properly speaking, it is improperly raised by the defendants' motions to dismiss. Essentially, the defendants' attack is upon the validity of the Circuit Court search warrant, the fruits of which, the defendants claim, are the poisonous fruits of the poisonous tree. If the search warrant is invalid, everything that flows from it is invalid.

The defendants' counsel has mistaken the motion to dismiss for the motion to suppress evidence under General Statutes § 54-33f. The two are not the same. If the search is for any reason illegal, it does not require a dismissal of the information; it only requires the exclusion at trial of the evidence illegally seized. *Alderman* v. *United States,* 394 U.S. 165, 171. A motion to dismiss is never properly used to

attack a search warrant because under Practice Book § 477B a motion to dismiss can only be directed to an information or indictment. The proper motion to attack the warrant is a motion to suppress under Practice Book § 477C. Nevertheless, without sanctioning the use of the motion to dismiss as a means of suppressing evidence under § 54-33f, we will rule on the vital issues raised, in order to prevent further delay in the disposition of these cases, especially in view of the fact that the defendants by the allegations of their motions seek in effect to attack the court's jurisdiction simultaneously with an attack on the search warrant and the materials seized under it, thereby submitting the entire matter before the court.

The "poisonous tree" doctrine applies to the offer of all evidence that derives from an illegal search, seizure, arrest, confession, or the like. The fact that an arrest is illegal, however, does not prevent a court from trying and convicting a person upon proper evidence if the jurisdictional defect in the arrest itself is not timely challenged. Absent a timely challenge, the illegal arrest, per se, is constitutionally irrelevant. *Frisbie* v. *Collins,* 342 U.S. 519.

The United States Supreme Court in *United States* v. *Blue,* 384 U.S. 251, 255, declares: "Even if we assume the Government did acquire incriminating evidence in violation of the Fifth Amendment, . . . [defendant] would at most be entitled to suppress the evidence and its fruits if they were sought to be used against him at the trial. . . . [T]he remedy does not extend to barring the prosecution altogether." This proposition is echoed in *United States ex rel. Orsini* v. *Reincke,* 286 F. Sup. 974, 977, aff'd, 397 F.2d 977, cert. denied, 393 U.S. 1050: "In testing whether 'due process of law is satisfied,' . . . con-

cern is only with constitutional violations which have a prejudicial effect upon the guilt determining process at the trial. The relationship between the remote concept of an illegal arrest and a later conviction of the arrestee at a trial is established only where there is a functional link between the two. It is not the rupture of a defendant's privacy — whether of his home, or his person — but the use of the fruits of that unconstitutional intrusion to obtain his conviction that is forbidden, e.g. the admission at the trial of evidence obtained by an unlawful search and seizure." To the same effect are *Charron* v. *United States,* 412 F.2d 657, 659; *Sewell* v. *United States,* 406 F.2d 1289, 1293; *Swann* v. *State,* 7 Md. App. 309, 311; *Commonwealth* v. *Gorman,* 288 Mass. 294, 299.

There are a multitude of cases expounding the evidential exclusionary rule announced in *Mapp* v. *Ohio,* 367 U.S. 643, and its various manifestations in the form of the "fruit of the poisonous tree" doctrine. The defendants have cited some of them. None of them, however, supports the defendants' basic proposition; nor do any other cases—not cited by the defendants—dealing with the exclusionary rule support their view. All authorities beginning with *Silverthorne Lumber Co.* v. *United States,* 251 U.S. 385, 392, *Nardone* v. *United States,* 308 U.S. 338, 341 (where the phrase "fruit of the poisonous tree" was first coined), and *Mapp* v. *Ohio,* supra, 659, without mentioning the plethora of cases cited in Pitler, " 'The Fruit of the Poisonous Tree' Revisited and Shepardized," 56 Cal. L. Rev. 579, clearly establish the very opposite of the defendants' contention. Whether we are dealing with the "poisonous tree" itself or its fruit, the application of fourth amendment rights is in the form of an exclusionary rule designed primarily to deter official or police unlawfulness in the acquisition of evidence. The rule has

not been applied to destroy entirely the right of the state to prosecute; it merely excludes from use all tainted evidence offered at the trial. See *Mapp* v. *Ohio,* supra, 656.

It may be, in a given case, that where certain vital evidence is suppressed under the *Mapp* rule, the state's case may thereafter collapse. But the defendants' attempt to convert the *Mapp* rule into an instrument to destroy court jurisdiction to hear the case derives from a confusion of legal concepts in the defendants' minds and is nowhere sustainable under the law.

From the above discussion, it is manifest that the motions to dismiss, assuming they were proper in the first place to challenge jurisdiction, must be denied.

### B

The defendants next proceed to demand the right to present evidence to go behind the words of the affidavit to prove their lack of credibility. They argue that, unless this is permitted, the reasons for the exclusionary rule set forth in *Mapp* (p. 659), to force the police to obey constitutional mandates, i.e. to compel the government to obey its own laws, are defeated. Either the defendants do not understand what *Mapp* teaches or they choose to ignore what it says. The exclusionary rule does protect judicial integrity and does compel police and official adherence to the law because it makes useless at trial anything seized in violation of law. What purpose, then, do the police have in continuing on such a course of disregarding the law?

Nevertheless, the court should consider and rule upon the asserted right of the defendants to offer evidence prior to trial to refute the veracity of the affidavits attached to the bench warrants. The ques-

tion is not new in other jurisdictions, but it has not
been decided by our Supreme Court. It appears that
the weight of authority, and the better view, is con-
tained in *State* v. *Petillo,* 61 N.J. 165, 173–79. New
Jersey refuses to allow the truth of the factual
assertions contained in the affidavit submitted in
support of an application for a search warrant to
be controverted on a motion to suppress the in-
criminating evidence seized in the execution of the
warrant.

Article first, § 7, of the Connecticut constitution
and the fourth amendment to the federal constitu-
tion authorize search warrants issued by a proper
judicial officer upon a showing "supported by oath
or affirmation" of probable cause to believe a crime
has been, is about to be, or is being committed at the
place described. The constitutions are satisfied if a
judicial mind decides that the allegations in the
affidavit sworn to and submitted to the judge show
probable cause. The judge is trusted to evaluate the
legal sufficiency of the sworn facts and the credibility
of the affiant. If he has doubts, he may require
additional proof. But if he is satisfied on all scores,
and the facts do make a sufficient showing of proba-
ble cause, "then the legal propriety of the issuance
of the warrant ought to be beyond further question."
*State* v. *Petillo,* supra, 174.

The ultimate truth of the criminal charge is never
involved on a suppression motion. In fact, it is an
effort by the defendants to avoid the evidence of the
truth which provides corroboration of the basic
truthfulness of the affidavit. Furthermore, in the
final analysis, the defendants are not foreclosed
from disputing the truth of the affidavit at the
plenary trial, and the untruthful officers or affiants
expose themselves to perjury charges, false swear-
ing, and monetary damages in a civil action.

The array of authorities supporting the New Jersey view are found in *State* v. *Petillo,* supra, 175. There are several reasons why this view is sound. One is the practical reason set forth in this quotation (p. 177) : "Recognition of a right in an accused to go behind the adequate showing of probable cause would add a further heavy burden to an already over-burdened criminal trial calendar. It would seriously retard the expeditious disposition of criminal cases without significantly aiding in determination of the ultimate truth of crime charged against the defendant. It is common knowledge that a great number of motions to suppress search warrants are made routinely at the present time on the ground that the supporting affidavit does not sufficiently demonstrate probable cause. The hearings thereon are time-consuming and the results indicate that the motivation is very frequently pursuit of discovery rather than to show lack of compliance with the Fourth Amendment. In our judgment the inevitably increased burden on trial judges that would be added if defendant's suggested attack on the veracity of statements were sanctioned, is not justified by the speculative risk of a rare warrant issued on a false statement."

Another reason is the practical destruction of the fourth amendment standard which the United States Supreme Court has delineated in terms of having an impartial judicial officer making the determination whether to issue the search warrant based upon the supporting affidavit. If we allow pretrial relitigation de novo of the affidavit's veracity, we in effect eliminate the necessity in the first place for such a judicial determination.

Furthermore, the refusal to allow a separate pretrial inquiry into the veracity of the fact allegations in the supporting affidavit of a bench warrant does

not determine the basic issue of innocence or guilt. Such a pretrial hearing only arises where the search proves productive, and while this does not validate an illegal search, it serves as a reminder that a balance must be struck in terms of the social costs of unwarranted extension of search and seizure principles.

Thus far, the United States Supreme Court has refrained from deciding this precise issue; *Rugendorf* v. *United States,* 376 U.S. 528, 531, rehearing denied, 377 U.S. 940; and it has denied certiorari in several state cases involving the same issue. See *People* v. *Mitchell,* 45 Ill. 2d 148, cert. denied, 400 U.S. 882; *People* v. *Bak,* 45 Ill. 2d 140, 143, cert. denied, 400 U.S. 882; *State* v. *Anselmo,* 260 La. 306, cert. denied, 407 U.S. 911; *Tucker* v. *State,* 244 Md. 488, cert. denied, 386 U.S. 1024. Some lower federal courts have adopted a modified view of the majority rule, as set forth in *United States* v. *Dunnings,* 425 F.2d 836, 839, cert. denied, 397 U.S. 1002, and *United States* v. *Thornton,* 454 F.2d 957, 966–70. They reject the idea that in every case a routine demand may be granted for a pretrial hearing as to the veracity of the affidavit. They do, however, provide that such a hearing may be permitted "only when there has been an initial showing of falsehood or other imposition" on the judge who issued the warrant. *United States* v. *Dunnings,* supra. But the difficulty with such a rule is that practically it results in such a pretrial hearing every time in order to determine what satisfies the "initial showing" requirement. How else can this be determined? If affidavits of counsel (as presented in the instant case) or of other affiants satisfy the "initial showing" requirement, then we must concede that such affidavits are easily obtainable, based upon information and belief or upon alleged facts of the defendants' investigation, with the inevitable

result that the court in almost every case will find itself involved in pretrial relitigation of the issue of the veracity of search warrant or arrest warrant affidavits. The speculative risk of a rare warrant issued on a false statement hardly justifies increasing the burden on the judicial system under such circumstances.

Not all federal courts, moreover, agree with *Dunnings,* supra. *United States* v. *Bowling,* 351 F.2d 236, 242, cert. denied, 383 U.S. 908; *United States* v. *Brunett,* 53 F.2d 219; *Gracie* v. *United States,* 15 F.2d 644, cert. denied, 273 U.S. 748; *United States* v. *Doe,* 19 F.R.D. 1.

We should also recall that *McCray* v. *Illinois,* 386 U.S. 300, 307, ruled that the fourth amendment is satisfied if a judicial mind passes upon the existence of probable cause and the credibility of the affiant in an ex parte proceeding. In reviewing the validity of a warrant prior to trial, the reviewing court may only consider the information before the issuing judge. *Aguilar* v. *Texas,* 378 U.S. 108, 109; *Spinelli* v. *United States,* 393 U.S. 410; *United States* v. *Harris,* 403 U.S. 573 (where the court ruled that the truth of the affidavit is not in question when the court is deciding whether probable cause exists for issuance of a search warrant).

The court should comment further on one more detail. The defendants' counsel has submitted a personal affidavit controverting the veracity of the affidavits attached to the search warrant and the subsequent bench warrant. Counsel claims that many of the allegations made in his affidavit are the result of his personal investigation. By such a submission, counsel injected himself as a possible witness if the court had seen fit to grant his motion to offer evidence. The impropriety of such an affidavit is at once evident and counsel should refrain from such a

course of conduct, unless he and his law office are prepared to withdraw at once as the defendants' counsel.

Treating the defendants' motions as motions to suppress for lack of veracity in the affidavit supporting the bench warrants, the court denies the defendants' motions to offer evidence prior to trial on the merits of this issue.